**COMMUNITY LEGAL SERVICES, INC.**
Janet Ginzberg (Bar # 72152)
Brendan Lynch (Bar # 82675)
1424 Chestnut Street
Philadelphia, PA 19102
Telephone: 215-981-3700

**OUTTEN & GOLDEN LLP**
Adam T. Klein*
Justin M. Swartz*
Samuel R. Miller*
Rachel Bien*
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000
* *Admitted pro hac vice*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY MAYER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DRIVER SOLUTIONS, INC., DRIVER SOLUTIONS, LLC, DRIVER HOLDINGS, LLC, and C&S ACQUISITION, INC.,<br><br>Defendants. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>10 cu 1939 |

Plaintiff, Jeffrey Mayer, individually and as a class representative on behalf of all others similarly situated, by his attorneys Outten & Golden LLP and Community Legal Services, Inc., makes the following allegations against Defendants Driver Solutions, Inc., Driver Solutions, LLC, Driver Holdings, LLC, and C&S Acquisitions, Inc. ("Driver Solutions," "Defendants," or "the Company"):

### STATEMENT OF THE CASE

1. Driver Solutions specializes in training new truck drivers and placing them with well-known trucking companies. The Company refuses to procure placements for applicants with a felony conviction, no matter how old the conviction, its relation to the job, or the fitness or

ability of the applicant for the job. Because this practice perpetuates gross racial and ethnic disparities in the criminal justice system, it is unlawful under Title VII of the Civil Rights Act of 1964.

## PARTIES

**Jeffery Mayer**

2. Plaintiff Jeffrey Mayer is an African American man who was born in Philadelphia and lived there for three-quarters of his 48 years. He now resides in a suburb of the city in Dresher, Pennsylvania.

3. For most of his adult life, from approximately 1989 through 2006, Mr. Mayer has supported himself, his wife, and his five daughters by working as a bus driver.

4. In approximately May 2009, Mr. Mayer applied to Driver Solutions for a placement at one of the trucking companies for which it procures drivers. Mr. Mayer already had a Class B Commercial Drivers License ("CDL") and hoped to obtain a Class A CDL by going through Driver Solutions' training and placement program.

5. Driver Solutions refused to procure a placement for Mr. Mayer with any trucking company because of a prior felony conviction, which Mr. Mayer disclosed to Driver Solutions during a telephone interview.

6. In his current job, Mr. Mayer coordinates a team of employees who are responsible for ensuring that his employer's fleet of vehicles is maintained in good repair.

**Driver Solutions**

7. Upon information and belief, Driver Solutions, Inc., Driver Solutions, LLC, Driver Holdings, LLC, and C&S Acquisitions, Inc. are a single integrated enterprise within the meaning of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII").

8. Upon information and belief, Defendants share a common management, have

common ownership, including many of the same principals and officers, and operate from the same two locations.

9. Driver Solutions, Inc. is engaged in business affecting commerce, employs more than 15 employees, and is an employment agency under Title VII.

10. Driver Solutions, Inc. uses a discriminatory background screening practice and applied it to Plaintiff and to all applicants of its services.

11. Driver Solutions, LLC is engaged in business affecting commerce, employs more than 15 employees, and is an employment agency under Title VII.

12. Driver Solutions, LLC uses a discriminatory background screening practice and applied it to Plaintiff and to all applicants of its services.

13. Driver Holdings, LLC is engaged in business affecting commerce, employs more than 15 employees, and is an employment agency under Title VII.

14. Driver Holdings, LLC uses a discriminatory background screening practice and applied it to Plaintiff and to all applicants of its services.

15. C&S Acquisitions, Inc. is engaged in business affecting commerce, employs more than 15 employees, and is an employment agency under Title VII.

16. C&S Acquisitions, Inc. uses a discriminatory background screening practice and applied it to Plaintiff and to all applicants of its services.

## JURISDICTION AND VENUE

17. This Court has jurisdiction under 28 U.S.C. § 1331 as this claim arose under the Constitution, laws, or treaties of the United States and under § 717 of Title VII, 42 U.S.C. § 2000e-5(f).

18. At all relevant times, Defendants were subject to personal jurisdiction in Pennsylvania.

19. Defendants purposefully reach out to residents of Pennsylvania through advertisements on their website that directly target Pennsylvanians. A true and correct copy of one such webpage contained on Defendants' website is attached as Exhibit A.

20. Such advertisements state, *inter alia*, "The Driver Solutions Network . . . has numerous trucking job opportunities throughout the state of Pennsylvania," and "With cities like Pittsburgh, Philadelphia, Scranton and York, Pennsylvania offers a good deal of trucking job options."

21. Defendants' website also states: "We Work With Some Of The Best Names In The Trucking Industry. That's the biggest benefit of beginning a trucking career through Driver Solutions. We already have partnerships with the trucking companies new drivers want to work for. Each of these companies is well-known, well-respected and counts on us to find new, quality drivers for them. In turn, they agree to sponsor the training of new drivers like you and pay the full tuition costs up front."

22. Two of the companies having partnerships with Defendants are PAM Transport and USA Truck. PAM Transport and USA Truck both operate trucking routes in and through Pennsylvania. Upon information and belief, USA Truck has a terminal in Bethel, Pennsylvania.

23. Pennsylvania is among the states included in Defendants' "hiring area," described on their website.

24. Individuals wishing to apply for Defendants' recruitment services submit their applications to Defendants by submitting an online form through Defendants' website.

25. The application form requests applicants' address and telephone number.

26. Upon information and belief, Defendants have received applications from Pennsylvania residents submitted electronically through their website, including Plaintiff's application.

27. Upon information and belief, Defendants have entered into contracts with residents of Pennsylvania. On their website, in response to the question, "If you are considering truck driver training programs at Driver Solutions, you may be wondering if you will have to sign a contract." Defendants state, "The answer is Yes."

28. Defendants' website is highly interactive. For instance, it solicits viewers to submit comments to blogs written by Company employees and officers.

29. Venue is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) because Plaintiff would have been employed in this district but for Defendant's discriminatory procurement practice.

30. As described below, Defendants' website contains information that promises that applicants will be placed in a trucking position near to where they live.

## PROCEDURAL AND ADMINISTRATIVE REQUIREMENTS

31. Plaintiff has satisfied the procedural and administrative requirements for proceeding under Title VII. On July 23, 2009, Plaintiff filed a timely written Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). On January 29, 2010, the EEOC issued a right to sue letter to Plaintiff, which was received on February 1, 2010. Plaintiff has commenced this action within 90 days of his receipt of the notice of right to sue.

## BACKGROUND

32. Arrest, conviction, and incarceration rates of African Americans and Latinos far exceed those of whites nationwide. According to the U.S. Department of Justice, almost 17% of adult black males and almost 8% of Latino males have been incarcerated. By contrast, only 2.6% of white males have been incarcerated. While African Americans make up approximately 13% of the population, they account for approximately 28% of arrests and 38% of felony

convictions in state courts around the country. Similarly, Latinos are arrested and incarcerated at rates significantly higher than their proportion of the population.

33. As a result of these statistical disparities, restrictions on hiring or placing individuals with criminal records have a disproportionately severe effect on African Americans and Latinos. In other words, policies such as Driver Solutions' effectively import the discrimination present in the criminal justice system into the employment sector. This discriminatory denial of employment affects not only the individuals who are rejected, but also their families and entire communities.

34. For decades, federal courts and the EEOC have recognized that overly broad restrictions on hiring individuals with criminal records are discriminatory and illegal under Title VII of the Civil Rights Act. That law requires that where significant racial disparity exists, the use of criminal history can be considered only where the employer can prove that the particular crime at issue is related to the particular job in question, and that denial of the position is necessary for the employer to conduct its business.

35. In *El v. SEPTA*, 479 F.3d 232 (3d Cir. 2007), the Third Circuit Court of Appeals cast serious doubt over whether blanket policies, like that of Driver Solutions, that deny employment on the basis of criminal history regardless of the type of crime, its remoteness in time, or its relation to the job in question are justifiable under Title VII.

36. The EEOC has similarly rejected blanket policies in favor of policies that take into account the nature and gravity of the offense, the time that has passed since the offense, and the nature of the job in question. Even where an individual's criminal history is job-related, denial of employment can be justified only where there is no less discriminatory alternative that would meet the employer's legitimate interests. Likewise, the Uniform Guidelines on the Use of Employee Selection Procedures mandate that any selection procedure having an adverse racial

impact on hiring or employment will be deemed discriminatory unless it has been validated as job-related and consistent with business necessity.

37. In this case, Driver Solutions, "the most comprehensive source for entry level truck driving jobs" within the Midwest, Southeast and East Coast, has a blanket practice of refusing to procure trucking jobs for applicants with any felony conviction. Such an outright ban disqualifies job applicants, like Plaintiff, whose criminal history has no bearing on their fitness or ability to perform the job.

38. In addition to being unlawful, such practices are bad public policy. The ability to find employment is an essential aspect of an ex-offender's re-entry into society. Recidivism declines when ex-offenders have viable employment prospects and other stabilizing resources in their communities. Driver Solutions' practice of discriminating against individuals' with criminal records frustrates such public policy objectives. The trucking industry is also losing good workers like Mr. Mayer for no good reason.

## PLAINTIFF'S FACTUAL ALLEGATIONS

39. In May 2009, Mr. Mayer filled out an application form on Driver Solutions' website be placed with one of the trucking companies for which Driver Solutions procures applicants.

40. According to Driver Solutions' website, its "hiring area" includes a "large portion" of the Midwest, Southeast, and East coast regions of the United States.

41. At all times relevant, Plaintiff resided in Driver Solutions' hiring area.

42. Upon information and belief, Driver Solutions places applicants in trucking positions near to where the applicants live.

43. On Defendants' website, Defendants state in response to the question, "Do I have to live within the Driver Solutions recruiting or hiring area?":

> Yes. Because the Driver Solutions program is a company sponsored CDL training program, you must be eligible to work for the trucking company that sponsors your truck driver training. In order for the company to hire you, you must first have an established residence within their specific hiring area.

44. Defendants' website also states, "Through our Driver Solutions company paid CDL training program, we can help put you into a pre-arranged truck driving job opportunity in Pennsylvania. Complete our online trucking application today to get your truck driver training started."

45. In addition, Defendants' website states, "Trucking Companies have specific geographical hiring areas or may offer regional or dedicated routes. Driver Solutions will take into account where you live."

46. The website also tells applicants that Driver Solutions will "match you with a Driver Solutions Network training school in your area and make all the necessary arrangements."

47. It was Mr. Mayer's belief that he was applying for a trucking job located in or around his home in eastern Pennsylvania.

48. Mr. Mayer had over 18 years of experience as a bus operator when he applied for the placement.

49. Soon after completing the application on Driver Solutions' website, Mr. Mayer received a telephone call from David Locke, a Driver Agent, at Driver Solutions. The purpose of the call was to interview Mr. Mayer for a placement.

50. During the interview, Mr. Mayer told Mr. Locke that he had a prior felony conviction and asked him whether that would have any impact on his placement.

51. Mr. Mayer had seen a statement on Driver Solutions' website that it does not place applicants with criminal histories.

52. Mr. Locke told Mr. Mayer that, due to his conviction, he did not fit the hiring

8

criteria of the trucking companies for which Driver Solutions recruits.

53. Mr. Locke further told Mr. Mayer that as a result of the felony conviction, Driver Solutions would not procure or attempt to procure employment for Mr. Mayer with any of the trucking companies for which it recruits.

54. In fact, Driver Solutions tells prospective applicants on the Frequently Asked Questions section of its website that it "cannot accept applicants with a felony conviction (or deferred/adjudicated) into the [Commercial Drivers License] training program."

55. Driver Solutions states in the same section of its website that individuals with felony convictions can obtain Commercial Drivers Licenses ("CDLs").

56. Mr. Mayer's felony conviction was in 1986. In 1984, when Mr. Mayer was 21-years-old, he was arrested in connection with a robbery of a grocery store. Mr. Mayer contested the charges, claiming that he was mistaken for another man who looked like him, but was convicted and served a total of approximately five years in prison.

57. In the more than 20 years since his release in 1989, Mr. Mayer married, cared for his five daughters, and has consistently been employed. He has never been arrested or convicted of another crime.

58. The prior conviction had no bearing on Mr. Mayer's ability or fitness to perform the duties of a truck driver, as his many years as a bus driver and his desistence of arrest for 20 years demonstrate.

59. In fact, the U.S. Department of Transportation, which regulates CDLs, permits individuals with felonies to obtain such licenses unless the individual is unauthorized to drive because of a felony involving a motor vehicle.

60. The HAZMAT Endorsement Threat Assessment Program (49 U.S.C. § 5103(a)(1)), which governs the eligibility requirements for transporters of hazardous materials,

also recognizes that criminal records restrictions on employment may not and should not be applied in an overbroad manner. The Program disqualifies only the most serious felonies, such as murder, espionage, acts of terrorism and crimes related to explosive devices. Individuals can petition for a waiver of the disqualification for almost all crimes. All other offenses are prohibitive of a HAZMAT clearance only if they occurred within the seven years before the application for the HAZMAT permit. (49 C.F.R. § 1572).

## CLASS ACTION ALLEGATIONS

59. Plaintiff brings his class allegations under Fed. R. Civ. P. 23(a), and (b)(2) on behalf of a class defined as follows: All Latino and African American persons for whom Defendant(s) have failed or refused to procure employment or refer for employment, or who have been deterred from gaining referral for or procurement of employment, based on their criminal background between September 26, 2008 and the date of judgment in this action (the "Class").

60. Plaintiff is a member of the Class.

61. Upon information and belief, the members of the Class are so numerous that joinder of all of them is impracticable. Driver Solutions bills itself as "the most comprehensive source for entry level truck driving jobs" within the Midwest, Southeast and East Coast. Upon information and belief, hundreds of applicants apply to Driver Solutions for placements each week. Plaintiffs do not know the precise number of Class Members – this information is in Defendant's possession.

62. There are questions of law and fact common to the Class and these questions predominate over any questions affecting only individual members. Common questions include, among others: (1) whether Driver Solutions' stated policy on its website that it does not seek placements for applicants with criminal records deters individuals with criminal records from applying to Driver Solutions; (2) whether it is Driver Solutions' policy or practice to reject

applicants based on their criminal records; (3) what screening parameters Driver Solutions uses to reject applicants based on their criminal records; (4) whether Driver Solutions' policy or practice to reject applicants based on their criminal records has a disparate impact on Latino and African American applicants; (5) whether Driver Solutions' policy or practice to reject applicants based on their criminal records is job-related and consistent with business necessity; and (6) what equitable and injunctive relief for the Class is warranted.

63. Plaintiff's claims are typical of the claims of the Class: (1) Plaintiff applied for a placement with a trucking company for which Defendant procures employees; (2) Plaintiff was subjected to substantially the same screening device as other Class members; (3) Defendant refused to procure employment for Plaintiff when it learned of his criminal history; and (4) Plaintiff has the same discrimination claim as other Class members based on disparate impact. All of these claims are substantially shared by each and every class member.

64. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has no conflict with any class member. Plaintiff is committed to the goal of having Driver Solutions revise its placement policy and practice to eliminate its discriminatory impact on African American and Latino applicants.

65. Plaintiff has retained counsel competent and experienced in complex employment discrimination class actions.

66. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Driver Solutions has acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole. The Class members are entitled to injunctive relief to end Driver Solutions' common, uniform, unfair, and discriminatory policies and/or practices.

11

## CLAIM FOR RELIEF

## Disparate Impact
## Title VII of the Civil Rights Act of 1964,
## 42 U.S.C §§ 2000(e) *et seq.*
## (Brought on Behalf of Plaintiff and the Class)

67. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

68. Plaintiff brings this claim on his own behalf and on behalf of the Class.

69. Defendant's overbroad policy and practice of denying employment opportunities based on applicants' criminal histories harmed Plaintiff and the Class and constitutes unlawful race and/or national origin discrimination in violation of 42 U.S.C. §§ 2000 *et seq.*

70. Defendant's overbroad policy and practice of denying employment opportunities based on applicants' criminal histories has a disparate impact on Latinos and African Americans, and is neither job-related nor consistent with business necessity. Even if Defendant's policy and practice could be justified by business necessity, less discriminatory alternatives exist that would equally serve any alleged necessity.

71. Plaintiff and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiff and the Class he seeks to represent are now suffering, and will continue to suffer, irreparable injury from Defendant's discriminatory acts and omissions.

72. Defendant's conduct has caused, and continues to cause, Plaintiff and the members of the Title VII substantial losses in earnings and other employment benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for relief as follows:

1. Certification of the case as a class action on behalf of the proposed Class;

2. Designation of Representative Plaintiff Jeffrey Mayer as representative on behalf of the Class;

3. Designation of Representative Plaintiff's counsel of record as Class counsel;

4. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*;

5. A preliminary and permanent injunction against Defendant and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein;

6. An order that Defendant institute and carry out policies, practices, and programs that provide equal employment opportunities for all applicants regardless of criminal history status, unless such status can be justified as job-related and consistent with business necessity, where no less discriminatory alternative exists, and that Defendant eradicate the effects of its past and present unlawful employment practices;

7. An order instating Plaintiff and the Title VII Class members in Driver Solutions' training and placement program, or in lieu of instatement, an order for back and front pay (including interest) and benefits;

8. Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k);

9. Pre-judgment and post-judgment interest, as provided by law; and

10. Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: July 22, 2010
New York, New York

Respectfully submitted,

By: _____

**COMMUNITY LEGAL SERVICES, INC.**
Janet Ginzberg (Bar # 72152)
Brendan Lynch (Bar # 82675)
1424 Chestnut Street
Philadelphia, PA 19102
Telephone: 215-981-3700

**OUTTEN & GOLDEN LLP**
Adam T. Klein*
Justin M. Swartz*
Samuel R. Miller*
Rachel Bien*
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000
* *Admitted pro hac vice*

**Attorneys for Plaintiff and the Putative Class**

14

GreatCDLTraining.com » Truck Driver Jobs » Pennsylvania Truck Driving Jobs

**DRIVE SOLUTION**

Account Login

| Home | How It Works | Driving Jobs | Understanding Trucking | CDL Training | Apply Now | News | FAQ |

## Pennsylvania - Truck Driving Jobs

The Driver Solutions Network offers some of the best CDL truck driver training programs in the country, and has numerous trucking job opportunities throughout the state of Pennsylvania. From Pittsburgh to Philadelphia and from Scranton to York, Driver Solutions will help put you in the driver's seat of a great, new truck driving career in no time!

| Job Title/Description | Company | Location |
| --- | --- | --- |
| **Truck Driver - CDL Training & Truck Driver Job**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | PAM Transport | Allentown, PA |
| **Truck Driver - CDL Training & Entry Level Job**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | PAM Transport | Harrisburg, PA |
| **Truck Driver - Company Paid CDL Training Provided**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | PAM Transport | York, PA |
| **Truck Driver - CDL Truck Driver Training Provided**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | USA Truck | Pittsburgh, PA |
| **Truck Driver - CDL Truck Driver Training Provided**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | USA Truck | Philadelphia, PA |
| **Truck Driver - Truck Driver Training Provided**<br>Experience: Entry Level \| Pay: $35K - $70K<br>View Job Description | USA Truck | Scranton, PA |
| **Truck Driver – Truck Driver Training Provided**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | USA Truck | Altoona, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | USA Truck | Williamsport, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level \| Pay: $35K - $40K<br>View Job Description | USA Truck | Bethlehem, PA |

Exhibit A

| Job | Company | Location |
|---|---|---|
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | York, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Chambersburg, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Erie, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Harrisburg, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Johnstown, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Lancaster, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | McKeesport, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Meadville, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | New Castle, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Reading, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | State College, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Uniontown, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job** | USA Truck | Washington, PA |

| | | |
|---|---|---|
| Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | | |
| **Truck Driver - Company Paid Truck Driving School**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Allentown, PA |
| **Truck Driver – Company Paid CDL Training & Entry Level Job**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | USA Truck | Wilkes Barre, PA |
| **Truck Driver - Company-paid CDL Training**<br>Experience: Entry Level | Pay: $35K - $40K<br>View Job Description | PAM Transport | Philadelphia, PA |

| Home | Understanding Trucking | Driving Jobs | News | Videos |
|---|---|---|---|---|
| **How It Works**<br>Getting Started<br>Company Paid Training<br>Driver Qualifications<br>DOT Physical<br>Hiring Area<br>How To Apply<br>Who Is Driver Solutions | Why Choose Trucking?<br>Trucking Careers<br>What is a CDL?<br>Trucker Lifestyle<br>Truck Driver Expectations<br>Truck Driver Pay<br>What is an LTL Job?<br>What is an OTR Job?<br>DOT Qualifications<br>How to be Successful<br>Trucking Terms | P.A.M. Transport<br>USA Truck<br>**CDL Training**<br>What to Expect<br>Training Time<br>Trucking Education<br>CDL Training Trucks<br>Getting a CDL<br>School Locations | Trucking News<br>Driver Solutions News<br>Company News<br>Trucking Articles<br>**Apply Now**<br>**FAQ**<br>**Truck Driver Jobs**<br>**Blog** | CDL Training<br>Driver Qualifications<br>Life as a Truck Driver<br>Truck Driving Careers<br>Truck Driving School<br>Understanding Trucking<br>Video Magazine |

© 2010 Driver Solutions - All Rights Reserved | Privacy Policy | Contact Us | Terms and Conditions

| | |
|---|---|
| **COMMUNITY LEGAL SERVICES, INC.**<br>Janet Ginzberg (Bar # 72152)<br>Brendan Lynch (Bar # 82675)<br>1424 Chestnut Street<br>Philadelphia, PA 19102<br>Telephone: 215-981-3700 | **OUTTEN & GOLDEN LLP**<br>Adam T. Klein*<br>Justin M. Swartz*<br>Samuel R. Miller*<br>Rachel Bien*<br>3 Park Avenue, 29th Floor<br>New York, New York 10016<br>Telephone: 212-245-1000<br>* *Admitted pro hac vice* |

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFFREY MAYER, individually and on behalf of all others similarly situated,

                Plaintiff,

v.

DRIVER SOLUTIONS, INC., DRIVER SOLUTIONS, LLC, DRIVER HOLDINGS, LLC, and C&S ACQUISITION, INC.,

                Defendants.

### **CERTIFICATE OF SERVICE**

I, Olivia J. Quinto-Reyes, under penalties of perjury, certify the following as true and correct: I am not a party to this action; I am over 18 years of age; and I am a resident of the City and State of New York, New York.

I hereby certify that on July 23, 2010, I served a true and correct copy of the foregoing Plaintiff's Amended Complaint, herewith by causing same to be served by process server to the following attorneys of record for Driver Solutions, Inc., Driver Solutions, LLC, Driver Holdings, LLC, and C&S Acquisition, Inc., defendant in this action, whose last known address is:

**JACQUELINE K. GALLAGHER**
**JACOB M. SITMAN**
Obermayer Rebmann Maxwell & Hippel LLP
1617 J.F.K. Blvd
One Penn Ctr. 19th Fl
Philadelphia, Pa 19103-1895

Dated: New York, New York
July 23, 2010

Respectfully submitted,

By: *[signature]*
Olivia J. Quinto-Reyes
Paralegal